# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

RACHEL JENNINGS,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Case No. 14-CV-0347-CVE-PJC
                                    )
AAON, INC.,                         )
                                    )
            Defendant.              )

## OPINION AND ORDER

Now before the Court is Defendant AAON, Inc.'s Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 30) and Plaintiff's Opposed Motion to File Surreply in Response to Reply Brief Filed in Response to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. # 64).[1] Defendant AAON, Inc. (AAON) argues that plaintiff Rachel Jennings was not a qualified person with a disability as that term is defined under the Americans with Disabilities Act, 42 U.S.C. § 12010 et seq. (ADA), as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (ADAAA). Defendant also seeks summary judgment on plaintiff's claim of wrongful termination in violation of Oklahoma workers' compensation law. Plaintiff responds that the ADAAA substantially broadened the definition of disability and her breathing difficulties qualify as a physical impairment that substantially limits her ability to work. She also

---

[1]    Plaintiff claims that it necessary for her to file a surreply because defendant "has misrepresented the holdings of multiple cases" in its reply. Dkt. # 64, at 1. Defendant opposes plaintiff's request to file a surreply and responds that the Court will independently review the cases cited by defendant and make its own determination about the applicable law. Dkt. # 65. The Court finds that it is unnecessary for plaintiff to file a surreply, because defendant raised no new arguments or cited no new evidence in its reply and the Court has independently reviewed the cases cited by both parties. Plaintiff's motion (Dkt. # 64) for leave to file a surreply is denied.

claims that her employment was terminated while she was classified as temporarily totally disabled (TTD), and she was fired in violation of Oklahoma workers compensation law.

## I.

AAON manufactures air conditioning and heating equipment and, in October 2010, AAON hired Jennings as a line engineer. Jennings was assigned as the line engineer with production responsibilities for AAON's smallest rooftop air conditioner, and she was the engineering department's point of contact for questions related to this product. Dkt. # 30-1, at 9. In her own words, Jennings was a "liason between design and production" and she made sure "that all the things that can go wrong are addressed and to manage the logistics of that . . . ." Id. Jennings' physical presence on the production line was often required to observe any production issues that arose and to consult with production employees, design engineers, and quality personnel, and a line engineer spends a substantial amount of time on the production line. Dkt. # 30-4, at 1.

In July 2012, Jennings notified AAON that she had sought treatment for respiratory issues and she thought her respiratory problems might have been caused by something in the workplace environment. Dkt. # 30-1, at 25. Jennings' supervisor, Mark Walkup, referred her to the human resources department, and Walkup also contacted the human resources manager, Karen Niles, about Jennings' claim that something in the air at work was contributing to Jennings' respiratory problems. Dkt. # 30-4, at 2. Niles spoke to Jennings and met with Walkup, and Niles advised Walkup that AAON would need medical documentation detailing Jennings' restrictions and Jennings' suggested accommodations. Dkt. # 30-6, at 1. Even without medical records documenting Jennings' breathing problems, AAON agreed to relocate Jennings's office from the east building to the newly renovated west building, and it temporarily relieved Jennings of her line duties and assigned her to project-only

work. Dkt. # 30-1, at 13; Dkt # 30-6, at 2. AAON also approved intermittent leave under the Family and Medical Leave Act (FMLA) should Jennings need to take time off work due to her breathing problems. Dkt. # 30-3, at 2.

Jennings submitted medical records from her physicians at Breathe America for consideration by AAON. The records show that Jennings went for treatment on June 29, 2012, and she reported that she had suffered from shortness of breath and a low grade fever since March 2012. Dkt. # 30-6, at 8. Jennings claimed that she had "attacks" only at work, and she believed that she had allergies to water damage, mold, or dust. Id. Allergy testing showed that Jennings was not allergic to "trees, grasses, weeds, molds, cat, dog, and dust mite," but Jennings tested positive for an allergy to cockroaches. Id. at 11. On a subsequent visit to Breathe America, her physician noted that her work environment seemed to have some effect on Jennings' breathing, but it was difficult to determine what precisely was causing Jennings' respiratory problems. Id. at 10. Jennings testified during her deposition that she still believes that she has a mold allergy, even though skin tests were negative, and she does not believe that her confirmed allergy to cockroaches contributed to her breathing difficulties at work.[2] Dkt. # 30-1, at 23. Jennings' physicians did not recommend any specific accommodations for her, but Jennings claims that her physicians refused to suggest possible accommodations to avoid liability. Id. at 26-27.

On August 7, 2012, Jennings reported that she was having difficulty breathing after a maintenance worker used a cleaning spray and a deodorizer to clean an air conditioning unit near

---

[2]    Jennings claims that her physician mentioned that a pulmonary function test could be performed to test for a mold allergy, but the test could be dangerous and he did not recommend that Jennings take the test. Dkt. # 30-1, at 23. However, Jennings acknowledged that there is no medical evidence support her claim that she has a mold allergy. Id. at 23-24.

her office. Id. at 32; Dkt. # 30-3, at 2. AAON referred Jennings to Concentra for medical treatment. Dkt. # 30-8, at 1-2; Dkt. # 30-1, at 35. Jennings was examined by a physician and she was cleared to immediately return to work. Dkt. # 30-8, at 13-15. The physician noted Jennings' complaint that she was exposed to chemicals and that chemical exposure caused her to have severe respiratory problems, but he found no medical evidence that would clearly support Jennings' claim that exposure to chemicals caused her breathing difficulties at work. Id. at 15. Jennings completed an incident report and AAON filed a Form 2 with the Oklahoma Workers' Compensation Court. Id. at 16-19. Jennings returned to Concentra for a follow-up examination on August 24, 2012 and she was again cleared to work without any restrictions. Id. at 24.

On September 4, 2012, Jennings again reported that she was having severe difficulty breathing at work but she did not claim that she was exposed to any chemical or trigger for her breathing attack. Dkt. # 30-1, at 36-37; Dkt. # 30-3, at 2-3. Jennings' supervisors did not know what to do for her because she could not identify any trigger for her breathing problems, and they placed her on leave pending further medical evaluation.[3] Id. at 3; Dkt. # 30-8, at 2. AAON arranged for Jennings to be examined by Timothy Pettingell, M.D. Dkt. # 30-3, at 3. However, Jennings' appointment with Dr. Pettingell was not until October 18, 2012, and AAON chose to pay Jennings temporary total disability (TTD) until she could be seen Dr. Pettingell. Id.; Dkt. # 30-8, at 3. AAON also designated Jennings' leave as FMLA leave pursuant to company policy. Dkt. # 30-6, at 3.

---

[3]     Bob Fergus, AAON's vice president of manufacturing, testified at his deposition that he and Peggy Reeves, a human resources employee, initially thought that plaintiff was having an anxiety attack, because Jennings claimed that she was feeling faint, rather than showing signs of respiratory problems. Dkt. # 30-2, at 8.

While Jennings was on medical leave, AAON received a complaint from the Occupational Safety and Health Administration (OSHA) that "1) [e]mployees in the plant are exposed to exhaust from gas heat exchangers" and "2) [t]here is mold in the office areas."[4] Dkt. # 30-3, at 22. OSHA stated that it did not intend to investigate the allegations itself, but it directed AAON to conduct an investigation and to notify OSHA of the results of the investigation. Id. AAON hired Paradigm EH&S Consulting Group, LLC (Paradigm) to conduct testing for mold and other air-borne chemicals in both the east and west buildings. Dkt. # 30-3, at 3. Paradigm sampled two possibly affected areas in each building and compared those samples to an unaffected area, in addition to taking an outdoor sample for the purpose of comparison. Id. at 30-31. Testing showed that there was no amplification of mold or fungus in either the east or west building, and the total fungus spores per cubic meter were significantly less indoors on AAON's premises than the outdoor sample. Id. at 33. In a separate report, Paradigm concluded that there were no air-borne chemicals above the permissible OSHA exposure limits in the areas near gas heat exchangers in the east or west building. Id. at 47. AAON forwarded Paradigm's reports to OSHA. Id. at 60.

Jennings visited Dr. Pettingell on October 18, 2012, and he completed a report describing the visit and Jennings' medical history. Dkt. # 30-8, at 29. He reviewed Jennings' complaints of difficulty breathing at work and he noted that asthma had been ruled out as a diagnosis. Id. at 30. Jennings claimed that her symptoms resolved when she stayed away from work for several days and she had not used an inhaler since she left work on September 4, 2012. Id. In fact, Jennings claimed

---

[4]     Questioning by plaintiff's counsel during depositions of defendant's witnesses suggests that plaintiff made the OSHA complaint. Dkt. # 30-5, at 8. However, Fergus testified that he had no knowledge of who filed the OSHA complaint, and plaintiff does not allege that she was retaliated against for filing an OSHA complaint. Dkt. # 30-2, at 9.

that she had been completely asymptomatic since September 4, 2012. Id. Jennings reported that no other employees seemed to have difficulty breathing and she was not aware of a hazardous chemical leak or exposure at the workplace. Id. Dr. Pettingell concluded that Jennings had reached a state of maximum medical improvement (MMI) and that she could return to work without any medical restrictions. Id. at 31. He also found that Jennings was not TTD, even if she felt that she could not return to work at AAON without experiencing respiratory problems. Id. Jennings told Dr. Pettingell that that she felt that she could do most of her work from home, but she did not believe that AAON would allow her to work from home due to computer security issues. Id. at 30. Dr. Pettingell advised Jennings that she may have to seek other employment if she continued to experience breathing problems at work. Id. at 32.

AAON received Dr. Pettingell's report on October 26, 2012, and it stopped paying TTD benefits to Jennings based on Dr. Pettingell's conclusion that Jennings was not TTD. Dkt. # 30-3, at 3-4. Fergus reviewed Dr. Pettingell's report, and he advised the human resources department that AAON did not permit employees to work from home. Id. at 4. Even if working from home were permitted, he did not believe that Jennings could perform her job duties if she worked from home. Id. Jennings remained on FMLA leave. On November 14, 2012, Niles sent a letter to Jennings notifying her that she had 73 hours of FMLA leave remaining. Dkt. # 30-6, at 18. Fergus subsequently sent Jennings a letter notifying her that her FMLA leave would expire on November 21, 2012, and he stated that the latest medical information submitted to AAON indicated that Jennings should seek different employment due to her breathing problems. Dkt. # 30-3, at 61. AAON would not allow Jennings to remain on leave indefinitely, but she would be permitted to return to work if she could provide a specific return date and medical documentation showing that

it was safe for her to return to work.  Id.  Jennings attempted to contact her physicians, but she claims that they were closed for business due to the Thanksgiving holiday or they refused to clear her to return to work.  Dkt. # 30-1, at 43.  She did not provide any additional medical documentation to AAON, and Fergus made the decision to terminate Jennings' employment when her FMLA leave expired.  Dkt. # 30-3, at 4.

On June 24, 2014, Jennings filed this case alleging a claim under the ADA for wrongful termination.[5]  Dkt. # 2.  She also alleges that her employment was terminated while she was TTD and that she was terminated in violation of Oklahoma's workers' compensation laws.  Id.  Her complaint does not appear to allege a claim based on retaliation for seeking workers' compensation benefits, and her allegations are focused on her alleged wrongful termination while she was on protected TTD status.  Id. at 3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

---

[5]     The complaint does not specifically state the basis for federal jurisdiction, although the Court clearly has federal question jurisdiction over plaintiff's ADA claim.  Plaintiff's failure to include a statement of jurisdiction is significant, because she also alleges a state law claim. If the Court were to find that defendant is entitled to summary judgment on plaintiff's ADA claim, the Court will have to determine if has diversity jurisdiction over the state law claim or if it would be appropriate to exercise supplemental jurisdiction over plaintiff's state law claim.

element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Id.</u> at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that plaintiff cannot establish a <u>prima</u> <u>facie</u> case of disability discrimination, because was not disabled as that term is defined under the ADA, as amended by the ADAAA. Dkt. # 30, at 20-25. In addition, defendant claims that it made reasonable accommodations for plaintiff's breathing problems, and plaintiff has failed to identity any other reasonable accommodations that she actually requested or that would have allowed her to return to work. <u>Id.</u> at 26-31. Plaintiff responds that the ADAAA substantially broadened the meaning of the

term "disabled" and her respiratory problems qualify as a disability, even without a specific medical diagnosis. Dkt. # 45, at 20. She also claims that defendant perceived her to be disabled because she had a breathing problem, and she alleges that defendant failed to make all reasonable accommodations that would have permitted her to return to work. Id. at 24-29.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination can be shown by direct or circumstantial evidence. See Reinhardt v. Albuquerque Public Schools Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010). ADA discrimination cases based on circumstantial evidence are governed by the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). Pursuant to this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If she does so, "then the defendant must offer a legitimate, non-[discriminatory] reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006) (citations omitted). In order to defeat a motion for summary judgment, the plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Because there is no direct evidence of discrimination, the Court will apply the McDonnell/Douglas burden shifting analysis. In order to establish a prima facie case under the ADA, a plaintiff must demonstrate:

> (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability.

Morgan, 108 F.3d at 1324 (internal citations omitted). The ADA defines disability as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). To establish that she is disabled under § 12102(1)(A), plaintiff has the burden to show that "(1) [s]he has an impairment that (2) substantially limits (3) a major life activity." Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 545 (10th Cir. 2014). The first and third requirements are matters of law for the Court to decide, but the second requirement is a question of fact that must be submitted to a jury if there is a genuine dispute. Id.; Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1129 (10th Cir. 2003). The mere fact that an employee applies for and receives FMLA leave does not show that the employer regarded an employee as disabled. Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1219 (10th Cir. 2007).

Defendant asserts that the medical evidence provided by plaintiff failed to establish that she had a mental or physical impairment that would qualify as a disability under the ADAAA. EEOC regulations implementing the ADAAA define "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or

more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine . . . ." 29 C.F.R. § 1630.2(h)(1). In her deposition, plaintiff testified that her physical impairment was a "pulmonary sensitivity to mold and other environmental factors -- specifically mold." Dkt. # 30-1, at 43. However, allergy testing specifically ruled out an allergy or sensitivity to "trees, grasses, weeds, molds, cat, dog, and dust mite" as the cause of plaintiff's respiratory problems. Dkt. # 30-6, at 11. Even if plaintiff had a diagnosed mold allergy, defendant had air quality testing performed in both buildings where plaintiff could be assigned to work and there was not any amplification of mold in those places. Dkt. # 30-3, at 26-33. Plaintiff is correct that the ADAAA was enacted to broaden the definition of "disability" to remove any judicially created constraints on coverage under the ADA. Latham v. Board of Educ. of Albuquerque Public Schools, 489 F. App'x 239, 245 (10th Cir. July 12, 2012).[6] Plaintiff has cited no authority suggesting that the ADAAA so broadened the definition of "disability" that a plaintiff can be deemed disabled based only on self-diagnosis of a physical impairment. Although plaintiff attempts to distinguish Felkins v. City of Lakewood, 774 F.3d 647 (10th Cir. 2014), the Tenth Circuit has specifically rejected an ADA plaintiff's attempt to establish the existence of a physical impairment only by self-diagnosis of an impairment.[7] Id. at 651-52. Plaintiff's lay opinion that she has a mold allergy is inadmissible and it is not an acceptable substitute for medical evidence or the

---

[6]    Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[7]    Plaintiff argues that Felkins was decided under the wrong legal standard, because it applied a pre-ADAAA understanding of the term "disability." Dkt. # 45, at 20. However, Felkins was decided after enactment of the ADAAA and it specifically references the ADAAA, and defendant reasonably relied on Felkins in its motion for summary judgment.

testimony of a medical expert.  Id. Plaintiff failed to present her employer with any medical evidence that she had any type of identifiable respiratory problem, and she cannot establish that she was disabled under a theory that she had an actual physical or mental impairment.

Plaintiff argues that defendant regarded her as having a physical or mental impairment, because defendant placed plaintiff on FMLA leave due to a respiratory problem and defendant was aware that plaintiff claimed to have a sensitivity to certain environmental factors.  Dkt. # 45, at 21. Before enactment of the ADAAA, a person was regarded as disabled when"(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."  Johnson v. Weld County, Colorado, 594 F.3d 1202, 1219 (10th Cir. 2010).  However, the ADAAA provides a broader definition of disability when a plaintiff alleges that her employer regarded her as disabled, and "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A). The fact that plaintiff was placed on FMLA leave, standing alone, does not show that defendant regarded her as having a disability. Berry, 490 F.3d at 1219-20.

The evidence shows that plaintiff had breathing difficulties at work and that defendant was aware of plaintiff's claims that the workplace environment was causing plaintiff's breathing problems, but this does not automatically show that defendant regarded plaintiff as disabled. Plaintiff left work on September 4, 2012 after reporting that she felt faint and lightheaded, and she

was placed on medical leave pending evaluation by Dr. Pettingell. Dkt. # 30-1, at 36-37; Dkt. # 30-3, at 2-3. Plaintiff claimed that she had been exposed to something, but Fergus and Reeves were present during the incident and they asked plaintiff if she was having an anxiety attack. Dkt. #30-2, at 8. Plaintiff visited Dr. Pettingell on October 18, 2012, and he found no medical evidence supporting a particular diagnosis for plaintiff's breathing problems. Dkt. # 30-8, at 29-31. However, he did advise plaintiff to seek out other employment if she was only having breathing problems at work. Id. at 32. Fergus and Niles reviewed Dr. Pettingell's report and asked plaintiff to provide medical evidence that it was safe for her to return to work and to identify any restrictions or accommodations that were medically necessary. Dkt. # 30-3, at 61. Plaintiff did not provide any additional medical documentation and she did not request an extension of time to submit such documentation, and Fergus decided to terminate plaintiff's employment when plaintiff had exhausted her FMLA leave. Dkt. # 30-3, at 4. Reeves testified in her deposition that she "perceived that [Jennings] believed she had an ailment."[8] Dkt. # 30-7, at 12. Niles stated that it was "possible" that plaintiff had a breathing-related condition, but the medical documentation did not clearly show that plaintiff had a condition that would render plaintiff disabled. Dkt. # 30-5, at 8-9. Niles testified that she did not consider plaintiff to be disabled, because she had not received any medical documentation from plaintiff that would support such a belief. Id. at 8. Fergus believed that plaintiff had a "breathing issue," but he did not have any idea what was causing plaintiff's respiratory problems. Dkt. # 30-2, at 11. He subsequently clarified his deposition testimony and explained that plaintiff reported to him that she had breathing problems, but the medical

---

[8]    Plaintiff misquotes Reeves' deposition testimony and she claims that Reeves stated that "she 'perceived that [Jennings] had an ailment.'" Dkt. # 45, at 21. That was not Reeves' deposition testimony and the Court has accurately quoted Reeves' testimony in this Opinion and Order.

documentation he reviewed did not establish that plaintiff had a breathing impairment. <u>Id.</u> at 16. The evidence cited by plaintiff does not show that defendant viewed her as unable to work due to a mental or physical impairment. Instead, the evidence shows that Fergus, Niles, and Reeves were aware of plaintiff's complaints that she had a breathing problem and her allegations that her breathing problems were work-related, but their deposition testimony uniformly shows that they did not believe that plaintiff had a diagnosed physical impairment that could constitute a disability. The Court finds that defendant did not regard plaintiff as disabled under the standard provided by the ADAAA.

Even if the Court were to assume that defendant was disabled, she still must show that she was a qualified person with a disability who could perform the essential functions of her job with or without a reasonable accommodation. In <u>Hawkins v. Schwan's Home Servs., Inc.</u>, 778 F.3d 877 (10th Cir. 2015), the Tenth Circuit explained that the "essential functions" are the "fundamental job duties of the employment position the individual with a disability holds or desires." <u>Id.</u> at 884. An employer's judgment as to what functions are essential must be given consideration and an "employer's written job description shall be considered evidence of the essential functions of the job." <u>Id.</u> A plaintiff may not rely on an her "employer's tolerance of her impairment-based, ostensibly temporary nonperformance of essential duties as evidence that those duties are nonessential." <u>Robert v. Bd. of County Comm'r of Brown County, Kansas</u>, 691 F.3d 1211, 1217 (10th Cir. 2012).

The most basic and important function of most occupations is physical presence at work, and the Tenth Circuit has recognized that attending work is almost always an essential job function, even if many of an employee's tasks could be performed from home. <u>Mason v. Avaya Commc'n, Inc.</u>,

357 F.3d 1114, 1119-21 (10th Cir. 2004). Defendant argues that plaintiff's job required her to attend work and to come to the production line, even if she subjectively believed that she could perform project work from home. Dkt. # 30, at 27. Fergus explained that plaintiff's line responsibilities were temporarily removed, but she still needed to be at work "to deal with the engineering staff" and that she had daily contact with vendors while working on projects. Dkt. # 30-2, at 14. Plaintiff does not refute that physical presence at work was an essential job function, but she argues that attendance at an "unhealthy location" cannot be deemed an essential job function. Dkt. # 45, at 26-26. She has produced no evidence suggesting that defendant's workplace was unhealthy or dangerous due to the presence or mold or any other environmental irritant. Defendant conducted air quality tests in the areas near plaintiff's office and there was no amplification of mold indoors. Dkt. # 30-3. Even if there was mold, plaintiff has not been diagnosed with a mold allergy and she has only a subjective belief that mold causes her breathing problems. There was an isolated incident when plaintiff experienced breathing problems after a spray cleaner was used to clean the coils of an air conditioner, but there is no evidence that plaintiff was routinely exposed to this type of chemical. In addition, plaintiff told Dr. Pettingell no other employees were having breathing difficulties at defendant's workplace and there is no evidence that the workplace was generally considered "unhealthy." Dkt. # 30-8, at 30. Plaintiff claims that defendant told her that she could not return to work and that she would have returned to work if defendant had permitted her to work when her FMLA leave expired. Dkt. # 45, at 25-26. However, she testified in her deposition that she was looking for another job while she was on FMLA leave because she thought the "respiratory situation was getting bad" and she did not know if she could return to work. Dkt. # 30-1, at 41. While she claims that defendant did not permit her to return to work, there is no evidence in the

summary judgment record that she actually asked to return to work and she did not request an extension of time to supply medical records of her condition or any medically necessary accommodations that would have permitted her to work. The Court finds that physical presence at work was an essential function of plaintiff's job and plaintiff has not shown that she would have been able to physically attend work.

Plaintiff must show that there would have been a reasonable accommodation that would have enabled her to perform the essential functions of her job, which includes her physical presence at work. An accommodation is reasonable only if it would not have modified or eliminated an essential job function. Hennagir v. Utah Dep't of Corrections, 587 F.3d 1255, 1264 (10th Cir. 2009). Accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant post, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. 12111(9)(B). Federal regulations require the employer to engage in an interactive process with the employee to formulate reasonable accommodations, but an "employer cannot be expected to propose reasonable accommodations absent critical information on the employee's medical condition and the limitations it imposes." Templeton v. Neodata Servs., Inc., 162 F.3d 617, 619 (10th Cir. 1998).

Plaintiff argues that there were accommodations that would have allowed her to continue to maintain her employment with defendant and be physically present at work, even though it is not clear that she actually requested any specific accommodations while she was employed by defendant. At a fundamental level, it is not clear that plaintiff can show that any accommodation

would have permitted her to work because she failed to provide medical evidence diagnosing the cause of her respiratory problems or identifying the trigger that caused her to have difficulty breathing. She states that she would have liked defendant to move her to a new office to an area that was not affected by mold. Id. at 45. Defendant did move her to a new office in the west building and air quality testing showed no evidence of mold near the office. Plaintiff claims that she asked to move to a different location after her transfer to the west building but Niles refused to move plaintiff to a new office. Id. However, there is no reason to believe that moving to a new office would have improved plaintiff's "respiratory situation," because plaintiff has not identified a trigger for her respiratory problems and plaintiff's self-diagnosis of an allergy to mold does not explain why she was having breathing difficulties at defendant's workplace. Plaintiff claims that she could have worn a respirator if it would have allowed her to keep her job, but she did not actually request this accommodation from defendant and she did not discuss this with her medical providers before her employment was terminated. Id. at 46. Plaintiff states that she asked Reeves or someone at the human resources department if she could be referred to an occupational therapist, but defendant denied her request because plaintiff had already been referred to Dr. Pettingell. Id. Plaintiff claims that an occupational therapist or a physician specializing in workplace health issues could have definitely diagnosed her with a mold allergy or could have suggested alternative accommodations. Id. Diagnosing plaintiff with a mold allergy would not allowed plaintiff to work because there is no evidence of mold at defendant's workplace. Plaintiff also has not shown that having a person suggest additional accommodations would have been helpful, because it would have been extremely difficult for a physician to come up with a reasonable accommodation without knowing the cause

of plaintiff's respiratory problems. The Court finds that none of plaintiff's proposed accommodations would have allowed plaintiff to return to work.

Plaintiff claims that defendant failed to engage in an "interactive inquiry" with plaintiff to look for reasonable accommodations that would have allowed her to return to work. "The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties," but this process "must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations . . . ." Smith v. Midland Brake, Inc., 180 F.3d 1154, 1171 (10th Cir. 1999). It is the employee's request for an accommodation that triggers an employer's obligation to begin the interactive process, even if the employer has notice that an employee may be disabled. Koessel v. Sublette County Sheriff's Dep't, 717 F.3d 736, 744 (10th Cir. 2013). Fergus sent plaintiff a letter requesting additional medical documentation before plaintiff was terminated, and she failed to provide any evidence in response to Fergus' letter. The information available to defendant did not establish that plaintiff had an identifiable respiratory problem, and it is unclear how plaintiff expected defendant to provide an accommodation without more information about her medical condition. In addition, the Court has already examined possible accommodations suggested by plaintiff in the course of this litigation, and none of the proposed accommodations would have permitted her to perform the essential functions of her job.

The Court finds that plaintiff cannot establish a prima facie case of disability discrimination, and defendant should be granted summary judgment on plaintiff's ADA claim. Plaintiff was not disabled due to the existence of an actual physical or mental impairment, and there is no evidence that defendant regarded her as disabled. Plaintiff also has not shown that she is a qualified person

with a disability, because she has not identified a reasonable accommodation that would have allowed her to perform the essential functions of her job.

## IV.

Defendant argues that it voluntarily paid plaintiff TTD benefits, and it cannot be held liable for terminating those benefits when it received medical evidence that plaintiff was not TTD. Dkt. # 30, at 35-37. Plaintiff responds that there is disputed evidence as to her medical condition, and that there is also evidence that defendant operated a self-insured workers' compensation plan and defendant had a financial incentive to discontinue TTD payments. Dkt. # 45, at 30-33.

Before reaching the merits of this claim, the Court must determine if it has subject matter jurisdiction over plaintiff's workers' compensation wrongful discharge claim. Plaintiff's complaint does not contain a jurisdictional statement, but plaintiff clearly alleges a federal law claim and the Court has federal question jurisdiction over plaintiff's ADA claim. Plaintiff has also alleged a state law workers' compensation claim for wrongful termination of employment while she was on TTD status.[9] The complaint does not state if the parties are completely diverse, and the Court cannot exercise diversity jurisdiction over plaintiff's state law claim. Under 28 U.S.C. § 1367, a federal district court has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ," but a court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has

---

[9]     In her response to defendant's motion for summary judgment, she also argues that defendant fired her in retaliation for taking or seeking workers' compensation benefits. However, this would be a separate claim and this claim was not alleged in plaintiff's complaint. The allegations of the complaint focus on plaintiff's alleged "protected status of [TTD]," and there are no allegations concerning retaliation for seeking or receiving TTD benefits. Dkt. # 2, at 3. Plaintiff has not asked for leave to file an amended complaint to add a claim of retaliatory discharge under Oklahoma workers' compensation law, and the Court will not consider this claim as it was not asserted in her plaintiff's complaint.

original jurisdiction." In this case, the parties have completed discovery and they are preparing for trial, and there are no novel or complex issues of state law that should be decided by a state court. Plaintiff's state law claim is also closely related to her ADA claim, and the Court finds that this is an appropriate case in which to exercise supplemental jurisdiction even though plaintiff's federal law claim has been dismissed.

The parties do not dispute that defendant voluntarily paid plaintiff TTD benefits for a period of time while plaintiff was on FMLA leave, and there is also no dispute that plaintiff never received a determination from the Oklahoma Workers' Compensation Court that she was TTD. The purpose of TTD is compensate an injured worker during a healing period following a work-related injury, but TTD payments cease "upon complete recovery or when maximum medical improvement is reached." Gray v. Natkin Contracting, 44 P.3d 547, 550 (Okla. 2001). To receive TTD benefits, an injured worker must initially show his or her "incapacity or loss of function in the physical or medical sense that is established by medical evidence." Id. at 551. If this element is established, the second element of a claim for TTD benefits is "the inability to earn wages that is normally demonstrated by nonmedical evidence touching upon the claimant's employment situation," and a claimant who is able to work is not entitled to TTD benefits. Id. Under OKLA. STAT. tit. 85, § 341(B), an employer is not permitted to discharge an employee solely due to absence of work when the employee is receiving TTD.[10] However, it is within the jurisdiction of the Oklahoma Workers' Compensation Court to determine if a person qualifies as TTD. Gray, 44 P.3d at 550.

_____

[10]     The Court notes that § 341 has been repealed, but the Oklahoma Supreme Court directs courts to follow the workers' compensation laws in effect when the injury or claim accrued. Williams Companies, Inc. v. Dunkelgod, 295 P.3d 1107, 113 (Okla. 2012). In any event, § 341 has been recodified at OKLA. STAT. tit. 85A, § 7, and the same legal standard is applicable under either statute.

Plaintiff claims that she could not have been discharged in November 2012, because she believed that she was on TTD status and she could not be fired solely for missing work. However, she wholly fails to respond to defendant's argument that § 341(B) was inapplicable because plaintiff never received a determination by the Oklahoma Workers' Compensation Court that she was actually TTD. The Court finds that plaintiff cannot obtain relief under § 341(B) without establishing that the Oklahoma Worker's Compensation Court actually found that plaintiff was TTD. Polk v. Professional Clinical Laboratories, Inc., 2012 WL 3542205, *6 (W.D. Okla. Aug. 16, 2012). Plaintiff has cited no authority that an employer's voluntary payment of TTD benefits for a period of time can serve as a substitute for a judicial finding of TTD. There is no evidence that plaintiff had filed a claim for TTD benefits before her employment was terminated, and the Court finds that plaintiff did not have a "protected status" at the time of her termination. In any event, plaintiff also admits that she was actually seeking other employment when her employment was terminated. Dkt. # 30-1, at 41. "A claimant who is . . . able to work . . . is not entitled to [TTD] compensation." Gray, 44 P.3d at 550. Defendant is entitled to summary judgment on plaintiff's state law workers' compensation claim alleging wrongful discharge.

**IT IS THEREFORE ORDERED** that Defendant AAON, Inc.'s Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 30) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Opposed Motion to File Surreply in Response to Reply Brief Filed in Response to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. # 64) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine to Exclude Certain Evidence and Brief in Support (Dkt. # 26) is **moot**.

**DATED** this 1st day of June, 2015.

Claire V Eagl
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE